SWAYZE v. NEW JERSEY MIDLAND RAILWAY COMPANY.

1. The proviso in the 3d section of the act incorporating the New Jersey Midland Railway Company, requiring the road to be laid out in Sussex county, under the charter of the New Jersey, Hudson and Delaware Railroad Company, is not fulfilled, either in terms or effect, by the report of an assessment made under the charter of the New Jersey Western Railroad Company, which states that the commissioners have taken into consideration the benefits to the owner from such railroad. The benefits should not be estimated.
2. The affidavits and report show that the owner of the land had notice of the meeting of commissioners.

On *certiorari* to review appointment and report of commissioners, &c.

Argued at February Term, 1873, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff, *R. Hamilton.*

For the defendants, *M. M. Knapp.*

The opinion of the court was delivered by

SCUDDER, J. The appointment and report of commissioners to value the land and damages of the prosecutor, in proceedings under the defendants' charter to construct their road bed through Hardyston township, in the county of Sussex, are brought before us for review by *certiorari.*

The principal reason stated for a reversal is that the proceedings have been taken under the charter of the *New Jersey Western Railroad Company,* whereas by the charter of the New Jersey Midland Railway Company, (§ 3,) their road must be laid out and constructed through the county of Sussex, under the chartered rights, powers and privileges of the *New Jersey, Hudson and Delaware Railroad Company.*

The New Jersey Midland Railway Company is formed by the consolidation of the "New Jersey, Hudson and Delaware Railroad Company," "The New Jersey Western Railroad Company," and "Sussex Valley Railroad Company," author-

ized by an act approved March 17th, 1870, (*Laws* 811) and confirmed by statute of March 31st, 1871, (*Laws* 1093).

The 3d section of the charter contains the proviso " that the said consolidated or New Jersey Midland Railway Company shall be laid out and constructed through the county of Sussex, under the chartered rights, powers and privileges of the said New Jersey, Hudson and Delaware Railroad Company."

It is claimed that this proviso will avoid all proceedings taken to condemn land under any other charter than that named therein. On the other hand, it is said that by the general terms of the act authorizing the consolidation of these three several companies, and their merger into one company, all the rights, powers and privileges possessed by each separately, were incorporated into the new company, and ceased to have any existence outside of the present organization. It is clearly a sufficient answer to this latter suggestion, that the proviso must be construed with the other parts of the act, so as to give it the effect intended by the legislature. While, therefore, the general purpose of the act may well be construed to be a complete union of these separate companies, it was plainly within the power of the legislature to insert a proviso, in the nature of an exception, that certain acts should be done under the special provisions of one charter, rather than under the general terms of the charter for consolidation. If this intention is manifest, as I think it is, then it settles the construction; and all proceedings within the proviso must be according to its terms. In this case, the New Jersey Midland Railway Company are about to lay out and construct their road through the lands of the prosecutor, in the county of Sussex. It must, therefore, be done under the chartered rights, powers and privileges of the New Jersey, Hudson and Delaware Railroad Company. These rights, powers and privileges include the condemnation of land for the purpose of a road bed and embankments, and the proceedings for condemnation must be according to the charter of the designated company.

The petition of the New Jersey Midland Railway Company, for the appointment of commissioners, sets forth, among

other things, that a survey of the route through the described
lands of Vancleve M. Swayze, the prosecutor, has been duly
filed in the office of the secretary of state, under and by vir-
tue of the provisions of the charter or act of incorporation of
the *New Jersey Western Railroad Company*, approved March
2d, 1867, and of the supplements thereto, *and particularly of
the supplement thereto, approved March 16th*, 1870; and the
petition prays for the appointment of commissioners to ex-
amine and appraise the land, and assess the damages accord-
ing to the provisions of said charter and supplements. The
appointment dated July 22d, 1872, recites the facts stated in
the petition, and appoints three commissioners to examine
and appraise the required land, and assess the damages, and
whatever they, as such commissioners are required by law to
assess upon twenty days' notice, &c.

The commissioners made their report, dated September
19th, 1872, with an appraisement of the value of the land
and materials required and taken, and for the damages of the
said Vancleve M. Swayze; "having made such appraisement
and assessment, at the same time *taking into consideration all
the benefits derived from or in consequence of the value of the
said railroad to the said owner.*"

This last clause of the report of commissioners explains
the difference between the charter of the New Jersey, Hudson
and Delaware Railroad Company, and of the New Jersey
Western Railroad Company, in relation to the assessment of
damages to lands.

By the charter of the former, passed March 8th 1832,
(*Laws* 133) the commissioners are required to make a just
and equitable estimate or appraisement of the value of the
lands or materials, and assessment of the damages sustained
by the owner or owners thereof, by reason of the taking.

By the charter of the latter, approved March 21st, 1867,
(*Laws* 386) the same form of words is used for the valuation
of lands and assessment of damages; but by the supplement
to the charter, approved March 16th, 1870, (*Laws* 580) to
which special reference is made in the petition of the defend-
ants in this case, it is enacted, that in the extension of their

railroad to a point on the Hudson river at or near Hoboken, or Weehawken, all necessary lands and materials to be taken and used by the said " The New Jersey Western Railroad. Company," may be taken in the same manner and by the same proceedings as are specifically set forth in the charter of the Hackensack and New York Railroad Company, excepting certain' lands, &c.

Turning to the charter of the Hackensack and New York Railroad Company, approved March 14th, 1856, (*Laws* 340), we find that, in making the valuation of land and assessment of damages, the commissioners are to take into consideration " *all the benefits to be derived from, or in consequence of, the said railroad, as the case may be, to the said owner or owners,*" &c.

In comparing the charters of these two companies, and supplements, it will be found this is the only important difference between them in laying out and constructing their respective roads ; and it is this difference that is doubtless the point aimed at in the proviso contained in the third section of the charter of the New Jersey Midland Railway Company. It was there intended that in constructing the road through Sussex county, under the act of consolidation, in the assessments of damages to lands taken, the benefits to be derived by the owners from the railroad should not be considered.

The petition and appointment in· this case show that the proceedings have been under the. charter of the New Jersey Western Railroad Company, and the commissioners state, in their report, .that they have considered all the benefits derived from, or in consequence of, the value of the said railroad to the said owner.

This is adopting, in terms, a wrong. principle of assessment, variant from that prescribed in the charter of the Midland company when laying their road throughthe county of Sussex.

But it is said that it is erroneous only in the terms used, and not in effect; that in the assessment of damages to the owner of the land, the estimate of the special benefits to

him as such owner, by the construction of the railroad, must enter as one of the elements of the calculation. It is true that, in the general definitions which have been given to the term damages in the proceedings for condemnation of lands by municipalities and railroad companies, questions have arisen, and differences of opinion are expressed as to whether this term includes an offset of benefits to remaining property, which are common to the owners of the lands taken, and others in the same locality, or those which are special and peculiar to such owner; the former being generally disapproved, and the latter being sometimes allowed, but it will be found that such construction is usually limited or extended by express legislative or constitutional provisions in the several states where the question has arisen. *Cooley on Const. Lim.* \*565, *et seq.* ; *Dillon on Mun. Corp.* 486, *et seq.* ; 1 *Redf. on Railways*, ch. 11, 71.

The subject is fully discussed in the above named elementary treatises, and in the notes, where the cases will be found collected. It is said by Judge Dillon, in his excellent work above cited, "that in determining the quantum of damages, regard must always be had to any special, constitutional, or statutory provisions relating to the subject, and the previous course of decision in which those provisions have not unfrequently originated."

It seems to me that this wise rule of construction, applied to this statute, will settle this question satisfactorily.

Our constitution, Article I, sec. 16, ordains, that private property shall not be taken for public use without just compensation. Article IV, sec. 7, ¶ 9, further provides, that individual or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners. We have no clause excluding benefits in the consideration of the compensation to be made. What, therefore, is a just compensation is left for legislative enactment or judicial determination.

The distinction in the two charters in this case in the methods of assessing damages to the land owners, by which

benefits are to be estimated under the one charter, and no mention of benefits is made in the other, and the express provision by which lands in Sussex county are to be assessed under the one charter and not under the other, indicate a distinct legislative intention that in Sussex county benefits shall not be considered or allowed, otherwise the proviso is of no effect. Under the statute concerning public roads, approved March 1st, 1850, which merely directed that the surveyors should make an assessment of the damages the owner of land would sustain by laying out or altering a public road or highway, it has been held by this court, that the surveyors were not bound to deduct from the amount of damages sustained the value of the benefits derived, and to award only the excess. *State* v. *Miller*, 3 *Zab.* 383 ; *Williamson* v. *Amwell*, 4 *Dutcher* 271.

But in the act of March 22d, 1860, it is said in the preamble, "whereas excessive damages have in many instances been assessed on land or real estate taken for roads, under the provisions of the act to which this is a supplement, &c." Section 1 enacts, that thereafter the surveyors shall assess the owner's damages over and above the advantage that will, in their judgment, accrue to such owner.

This would seem to be a more just and equitable method of estimating the damages the land owner will sustain, by allowing such as are above the special and peculiar benefits he will receive, and it is difficult to see why he should have any more. It is the measure of his actual loss or injury. But this charter under consideration has fixed another mode of estimating damages in a marked and peculiar manner.

The proviso in the 3d section of the act incorporating the New Jersey, Midland Railway Company, requiring the road to be laid out in Sussex county, under the charter of the New Jersey Hudson and Delaware Railroad Company, is not fulfilled either in terms or effect, by the report of an assessment made under the charter of . the New Jersey Western Railroad Company, which in express words states that the

commissioners have taken into consideration the benefits to the owners from such railroad.

Another reason assigned for reversal, that the commissioners proceeded in the absence of said Swayze, and acted without due and legal notice to him, is not sustained by the papers before us. There is proof by affidavit, that the notice of the meeting of the commissioners was duly served on him, and they report that they viewed and examined the lands and heard the allegations of the parties, and in the presence and on notice to the parties attending, adjourned to a certain hour, day, and place, and then and there appraised and assessed the value of the land and damages. In the absence of any contradictory proof this is sufficient.

The report of the commissioners is set aside.

CITED in *Butler* v. *Sewer Comm'rs*, 10 *Vr*. 665 ; *Crater* v. *Fritts*, 15 *Vr*. 374.